UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JAMES A. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:19-cv-00257-JPH-MJD |
| ) | |
| RICHARD BROWN, ) | |
| FRANK LITTLEJOHN, ) | |
| JERRY SNYDER, ) | |
| BEVERLY GILMORE, ) | |
| CHARLES DUGAN, ) | |
| JERRICHA MEEKS, ) | |
| DAWN AMMERMAN, ) | |
| JOSHUA COLLINS, ) | |
| RANDALL PURCELL, ) | |
| BRUCE LEMMON, ) | |
| ROBERT CARTER, ) | |
| JACK HENDRIX, ) | |
| MICHAEL OSBURN, ) | |
| MATT LEOHR, ) | |
| ANDREA MASON, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

**I. Background**

Plaintiff James A. Smith, an Indiana prisoner, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth and Fourteenth Amendment rights when they placed and kept him in administrative segregation on the Secure Housing Unit (SHU) at Wabash Valley Correctional Facility (Wabash Valley). Dkt. 1. After counsel appeared on behalf of Mr. Smith, he filed a 63-page amended complaint. Dkt. 41.

The Court concisely summarizes the allegations in amended complaint as follows. Mr. Smith was held in solitary confinement from March 24, 2011 until February 6, 2019. Dkt. 41, ¶ 1.

1

On March 10, 2015, he was released from solitary confinement and placed in F housing unit but was returned after less than 24 hours because he was assaulted by another inmate. Dkt. 41, ¶¶ 172, 194.  This allegedly violated Mr. Smith's Fourteenth Amendment due process rights because he was confined in solitary confinement without meaningful review of that placement. *Id.* at 62. The conditions of his confinement also allegedly violated the Eighth Amendment. *Id.* He further alleges violations of his Fourth and Fifth Amendment rights and brings state law tort claims. *Id.* at 62-63.

The defendants have filed a partial motion to dismiss, alleging that any claims based on alleged conduct that took place between March 24, 2011 and March 10, 2015, should be dismissed as barred by the applicable statute of limitations. They also argue that this includes all claims against Beverly Gilmore.[1]

## II. Legal Standard

The defendants seek relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure, but "the appropriate vehicle for resolving an affirmative defense is a motion for judgment on the pleadings under Rule 12(c), not a Rule 12(b)(6) motion." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020); *see also Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012) (stating, "we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint."); *cf. Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (example of pragmatic exception where complaint unambiguously set forth dates establishing statute-of-limitations defense). "Observing the distinction is necessary to allocate correctly the burdens of pleading and proof." *H.A.L. N.Y. Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020). Accordingly, the Court construes the defendants' motion as one under Rule 12(c), and the defendants bear "the burden of showing that the allegations of the

---

[1] Defendants also seek the dismissal of claims against John Doe defendants, but that issue is moot because the John Doe claims were dismissed in the screening entry of April 21, 2020. Dkt. [40].

complaint and an answer showed that an affirmative defense conclusively" defeats Mr. Smith's older claims as a matter of law. *Gunn*, 968 F.3d at 807.

In considering the motion, Mr. Smith's factual allegations are accepted as true and given the benefit of all reasonable inferences. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

### III. Discussion

Mr. Smith brings both federal constitutional claims and state law tort claims.

**A.    Federal Claims**

"[I]n § 1983 actions, federal courts apply the statute of limitations governing personal injury actions in the state where the injury took place. In Indiana, such claims must be brought within two years." *Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013) (citation omitted); *see also* Indiana Code section 34-11-2-4. Thus, the applicable statute of limitations for the constitutional claims is two years.

Mr. Smith alleges that he was kept in solitary confinement from March 24, 2011 until February 9, 2019, with about a one-day break on March 10, 2015. The defendants argue that because of this break, there are two distinct periods of time at issue. The first period of confinement in solitary ended on March 10, 2015, and a new period of confinement began on March 11, 2015. Mr. Smith filed his complaint on June 3, 2019, so June 3, 2017 was two years prior to the filing of the complaint. The defendants argue that any claims based on Mr. Smith's confinement through March 10, 2015 are time barred.[2]

---

[2] To the extent the defendants rely on a footnote in an Order in *Isby-Israel v. Wynn, et al.*, No. 2:12-cv-001116-JMS-MJD, dkt. 274 at 4, n. 4, in which the Court said it would limit most of its discussion to the review procedures that were in place in the two-year period preceding the filing of the suit in light of the statute of limitations, that footnote is not controlling because the

Mr. Smith responds that "[t]here is significant doubt as to whether Smith's short release from the SHU separates his claim into two for purposes of the statute of limitations." Dkt. 58 at 7. He urges the Court to resolve this "doubt" in his favor. *Id.* Mr. Smith also argues that the doctrines of continuing wrong, incapacitation, and concealment should toll his claims. The Court first considers whether under the continuing violation doctrine applies.

> The continuing violation doctrine … is aimed at ensuring that illegal conduct is punished by preventing a defendant from invoking the earliest manifestation of its wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time; the doctrine serves that end by treating the defendant's misconduct as a continuing wrong and deeming an action timely so long as the last act evidencing a defendant's violation falls within the limitations period. … Thus, where the violation at issue can be characterized as a continuing wrong, the limitations period begins to run *not* when an action on the violation could first be brought, but when the course of illegal conduct is complete.

*United States v. Spectrum Brands*, 924 F.3d 337, 350 (7th Cir. 2019) (internal citations omitted). "A violation is continuing where it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). For a continuing harm, the statute of limitations begins to run on the last occurrence of the harm. *Id.*

Mr. Smith was placed in solitary confinement on March 24, 2011. Dkt. 41, ¶¶ 169, 181. On February 24, 2015, Mr. Smith was approved to be released from solitary confinement and transferred to another facility through the ACT Program. *Id.,* ¶ 193. On March 10, 2015, he was released to the F housing unit, where in less than an hour he was assaulted by another inmate. *Id.*, ¶¶ 194, 199. Because both offenders continued to fight each other after prison officers ordered them to stop, they were sprayed with mace to break up the fight. *Id.*, ¶ 195.

---

issue of whether the continuing violation doctrine applied to Mr. Isby's case was not argued to the Court.

Prison reports indicate that when Mr. Smith arrived at the F housing unit, he announced that he was a member of a gang, MLD [Maniac Latin Disciples]. *Id.,* ¶ 199. The inmate who attacked Mr. Smith was reported to be a member of a different gang, the Aryan Brotherhood, which explained the immediate assault. *Id.*, ¶¶ 199, 205. Mr. Smith was found guilty of assault/battery and sanctioned to less than 15 days in disciplinary segregation. *Id.,* ¶ 198; dkt. 1-1 at 4. On March 25, 2015, a classification hearing was conducted, and it was determined that Mr. Smith should remain in solitary confinement. *Id.,* ¶¶ 201, 202; dkt. 1-1 at 5.

As noted, there were two periods of confinement in solitary confinement: from March 24, 2011, until March 10, 2015, and then again later on March 10, 2015, until February 9, 2019. The continuing violation doctrine deems "an action timely so long as the last act evidencing a defendant's violation falls within the limitations period." *Spectrum Brands*, 924 F.3d at 350 ("where the violation at issue can be characterized as a continuing wrong, the limitations period begins to run *not* when an action on the violation could first be brought, but when the course of illegal conduct is complete."). In *Turley*, the Seventh Circuit concluded that "lockdowns that cumulate to much longer periods, with only short breaks, may be" violations of the Eighth Amendment. *Turley,* 729 F.3d at 654 (Easterbrook, C. J., concurring) ("This case thus is within the scope of the cumulative-violation doctrine…"). The court found that a "cumulative approach to the continuing violation doctrine" applied to a series of improper lockdowns with short breaks such that the "statute of limitations began running from the last date of lockdown, or last day confined to the tiny cell…." *Id.* at 651.

Here, Mr. Smith was held in administrative segregation from March 24, 2011 until February 6, 2019. Dkt. 41, ¶ 1. He alleges that during this time he did not receive periodic meaningful review of his placement. *Id.* The crux of the alleged constitutional violations isn't the

5

reasons why he was placed in administrative segregation first in 2011 and again in 2015 but whether he received periodic meaningful review of his placement. The Court finds that "the violation at issue can be characterized as a continuing wrong" so "the limitations period begins to run *not* when an action on the violation could first be brought, but when the course of illegal conduct is complete." *Spectrum Brands*, 924 F.3d at 350. *See also Turley*, 729 F.3d at 650-51 (applying continuing violation theory to multiple, separate periods of lockdown totaling 534 days based "on the cumulative impact of numerous imposed lockdowns."). Therefore, the federal claims based on the first period of solitary confinement, from March 24, 2011, until March 10, 2015, are not barred by the statute of limitations.

### B. Claims Against Beverly Gilmore

The amended complaint alleges that "Beverly Gilmore was a casework manager in the administrative restrictive housing unit at Wabash Valley from 2008 until July 2014." Dkt. 41, ¶ 72. As noted, this action was filed on June 23, 2019. Dkt. 1. Ms. Gilmore was not a named defendant until the amended complaint was filed on April 22, 2020. Dkt. 41. Even under the continuing violation theory, "if a defendant leaves the institution altogether, his involvement in the alleged wrong is over. The date of the defendant's departure thus marks the last possible time when the claim might have accrued." *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 518 (7th Cir. 2019)

"Because the accrual date is no later than [Ms. Gilmore's] last day of work" at Wabash Valley, *id*. at 518, all federal claims against her are time-barred.

### C. State Law Claims

The amended complaint asserts various state law claims, including intentional infliction of emotional distress, negligence, negligent training, false imprisonment, confinement, and

6

conspiracy. Dkt. 41, ¶¶ 6-12. The defendants argue that the two-year personal injury statute of limitations applies to these state law claims. Ind. Code § 34-11-2-4 ("An action for: (1) injury to person or character; … must be commenced within two (2) years after the cause of action accrues.").

Mr. Smith contends that a five-year statute of limitation applies to his state law tort claims, relying on Indiana Code § 34-11-2-6. That statute provides:

> An action against:
> (A) a sheriff;
> (B) another public officer; or
> (C) the officer and the officer's sureties on a public bond;
>
> growing out of a liability incurred by doing an act in an official capacity, or by the omission of an official duty, must be commenced within five (5) years after the cause of action accrues. However, an action may be commenced against the officer or the officer's legal representatives, for money collected in an official capacity and not paid over, at any time within six (6) years after the cause of action accrues.

*Id*.

The defendants respond that they are employees of the Indiana Department of Correction but are not "public officers" within the meaning of Indiana Code § 34-11-2-6. The Indiana Court of Appeals has defined a public officer as an individual that "holds a position for which duties are prescribed by law to serve a public purpose." *Barrow v. City of Jeffersonville*, 973 N.E.2d 1199, 1204 (Ind. Ct. App. 2012). The *Barrow* court found that the City Director of Planning and Zoning and City Building Commissioner were public officials. *Id*.

The Seventh Circuit Court of Appeals did not resolve whether the five-year statute of limitations could be applied to tort claims brought against police officers in *Howlett v. Hack,* 794 F.3d 721, 726 (7th Cir. 2015), but it acknowledged that "Indiana defines a public officer as an 'individual [who] holds a position for which duties are prescribed by law to serve a public purpose,' and the taking of an oath, while not required, 'is a strong indicator' of a person's status as a public

7

officer." *Id.* (quoting *Barrow,* 973 N.E.2d at 1204). The *Howlett* decision stated that "[t]he argument that the public-officer statute applies is thus not a frivolous one." *Id.* ("Rather, § 34-11-2-6 might have been meant to create a uniform statute of limitations for all suits—including those for personal injury claims—when those suits are filed against public officers.").

Mr. Smith argues that Indiana Code section 11-10-1-7 renders the defendants public officers because it states, "the department shall review an offender so segregated at least once every thirty (30) days to determine whether the reason for segregation still exists." *Id.* The Court does not find this rationale persuasive because the statute is directed to "the department" of Correction, not to any specific office or officer.

The defendants further contend that they cannot be considered "public officers" for purposes of the five-year limitations period because they do not serve "out and openly among the public," dkt. 60 at 3, but that arguably is not true for all the defendants, including Commissioners Lemmon and Carter, Warden Brown, Assistant Wardens Hendrix and Littlejohn, and perhaps Southern Regional Director Osburn. Neither party discusses the particular positions each defendant held at the relevant times in relation to the public officer statute. Evidence may be required to determine which defendants, if any, are public officers.

Mr. Smith further argues that his incapacitation and the defendants' fraudulent concealment toll the statute of limitations on the state law claims. "District courts should not allow motions for judgment on the pleadings to deprive the non-moving party of the opportunity to make its case." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, No. 20-1207, 2020 WL 7585945, at *3 (7th Cir. Dec. 22, 2020).

> Although the motion may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further, thereby easing crowded trial dockets in the federal district courts, hasty or imprudent use of this summary procedure by the courts violates the policy in favor

8

of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense.

*Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 (3d ed. 2002)).

Considering the various tolling doctrines presented by Mr. Smith, the defendants have not met their burden of showing that the statute of limitations conclusively defeats Mr. Smith's state law claims against all defendants. The motion for judgment on the pleadings is **denied without prejudice as to the state law claims.**

### IV.     Conclusion

For the foregoing reasons, the defendants' partial motion to dismiss, which the Court construes as a motion for partial judgment on the pleadings under Federal Rule 12(c), dkt. [49], is **granted in part and denied in part**. The federal claims brought against Beverly Gilmore are **dismissed with prejudice.** The motion for partial judgment as to the other federal claims is **denied** and as to the state law claims is **denied without prejudice.**

**SO ORDERED.**

Date: 1/21/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel